STATE EX REL. HOLT and others, Petitioners, v. THOMPSON, Superintendent of Public Instruction, Respondent.

*No. State 160. Argued January 2, 1975.—Decided February 5, 1975.*
(Also reported in 225 N. W. 2d 678.)

660

For the petitioners there were briefs and oral argument by *Manny S. Brown* of Racine.

For the respondent the cause was argued by *John William Calhoun,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

There was a brief amicus curiae filed by *Robert G. Bramscher* of Kenosha for the Wisconsin Civil Liberties Union.

ROBERT W. HANSEN, J.   Does our state's released time for religious instruction statute [1] violate the establishment of religion clause in the first amendment to the federal constitution? [2] If it does not, does it violate the

---

[1] Sec. 118.155, Stats. (set forth above).

[2] Art. I, Amendments to the United States Constitution, providing: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . ."

without due process of law provision in the fourteenth amendment?[3] If it does not, does it violate the freedom of worship section of our state constitution?[4] Three questions here asked, and three to be answered.

*The first amendment.*

In dealing with any claim that constitutional assurances of the first amendment are invaded by a state statute, we are bound by the results and interpretations given that amendment by the decisions of the United States Supreme Court.[5] There are numerous such decisions dealing with the establishment of religion and free exercise thereof clauses in the first amendment,[6] most of them involving

---

[3] Art. XIV, sec. 1, Amendments to the United States Constitution, providing in material part: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[4] Art. I, sec. 18, Wisconsin Constitution, providing: "The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any ministry, against his consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries."

[5] *State ex rel. Warren v. Nusbaum* (1972), 55 Wis. 2d 316, 322, 198 N. W. 2d 650, this court stating: ". . . We are bound by the results and interpretations given the first amendment in these high court decisions. Ours not to reason why; ours but to review and apply. . . ."

[6] *Id.* at page 322, this court stating: ". . . Noting the internal tension in the first amendment between the two clauses ['establishment' and 'free exercise'], these decisions have sought '. . . to define the boundaries of the neutral area between these two provisions within which the legislature may legitimately act.' . . ." Quoting *Tilton v. Richardson* (1971), 403 U. S. 672, 677, 91 Sup. Ct. 2091, 29 L. Ed. 2d 790, rehearing denied, 404 U. S. 874, 92 Sup. Ct. 25, 30 L. Ed. 2d 120.

the relationship between religion and education.[7] Review and application of these high court rulings have been facilitated by that court's dividing such cases into two separate and distinct categories: (1) "those dealing with religious activities within the public schools," and (2) "those involving public aid in varying forms to sectarian educational institutions." [8] The footnotes and case citations accompanying this categorization clearly place released time for religious instruction statutes into the first category of cases, not the second.[9] As to released time statutes and their constitutional validity, the recent *Nyquist* decision cites and refers to two prior decisions, the *McCollum Case* [10] and the *Zorach Case*.[11]

In *McCollum*, there was presented to the high court an Illinois "released time" program under which the board of education permitted pupils to attend religious instruction classes conducted during regular school hours *in the public school buildings* by teachers furnished by an association of churches. In *Zorach*, four years later, the high court had before it a released time for public

---

[7] *Committee for Public Education v. Nyquist* (1973), 413 U. S. 756, 772, 93 Sup. Ct. 2955, 37 L. Ed. 2d 948, the United States Supreme Court noting: "Most of the cases coming to this Court raising Establishment Clause questions have involved the relationship between religion and education. . . ."

[8] *Id.* at page 772, the United States Supreme Court stating: ". . . Among these religion-education precedents, two general categories of cases may be identified: those dealing with religious activities within the public schools, and those involving public aid in varying forms to sectarian educational institutions. . . ."

[9] *Id.* at page 772, fn. 29, placing in the first category, *i.e.,* those cases dealing with "religious activities within the public schools," *McCollum v. Board of Education* (1948), 333 U. S. 203, 68 Sup. Ct. 461, 92 L. Ed. 649 ("release time" from public education for religious education); and *Zorach v. Clauson* (1952), 343 U. S. 306, 72 Sup. Ct. 679, 96 L. Ed. 954 (also a "release time" case).

[10] *McCollum v. Board of Education, supra,* footnote 9.

[11] *Zorach v. Clauson, supra,* footnote 9.

instruction plan in New York state under which, with written permission of the parents required, the religious classes were conducted *elsewhere than in the public school buildings,* with nonparticipating pupils remaining in the public school buildings. *McCollum* held the religion classes, conducted inside the public school buildings, to violate the establishment of religion clause in the first amendment. *Zorach* held the New York program, with the religious instruction conducted elsewhere than in the public school buildings, to be constitutionally valid. In *Zorach,* the high court made the distinction between the two cases, and the basis for it, crystal clear:

"This 'released time' program [the New York plan] involves neither religious instruction in public school classrooms nor the expenditure of public funds. All costs, including the application blanks, are paid by the religious organizations. The case is therefore unlike *McCollum v. Board of Education,* 333 U. S. 203, which involved a 'released time' program from Illinois. In that case the classrooms were turned over to religious instructors. We accordingly held that the program violated the First Amendment . . . ." [12]

In the statutorily mandated plan before us, the classes for religious instruction are to be conducted elsewhere than in the public school buildings, so it is *Zorach,* not *McCollum,* that controls. In point of fact, the Wisconsin plan and procedure is very nearly an exact carbon copy of the New York State plan approved in *Zorach.* Under both programs, the public schools release students during the school day so that they may leave the school buildings and school grounds and go to religious centers for religious instruction. Under both programs, a student is released on written request or permission of his parents. Under both programs, those not released stay in the classrooms. Under both programs, the responsibility for

---

[12] *Id.* at pages 308, 309.

attendance at the religion classes is on the religious organizations involved, with reports of attendance at the religious schools to be filed with the school authorities. Under the New York plan, such attendance reports were to be made weekly; in Wisconsin they are to be made monthly. Such reports, weekly or monthly, do not relate to the parents' permission or to the pupil's decision to go or forego going to the outside religious instruction classes. They are directed solely at not establishing a third option, to wit: electing to attend the outside classes and heading, instead, to the local pool hall.[13] Under both programs, the time allotted is limited—under the New York plan to one hour per week; under the Wisconsin plan to at least sixty minutes, but not more than 180 minutes per week. The Wisconsin plan provides that the time period or periods allotted for the classes in religious instruction shall be determined by the school board. This insures orderly scheduling, and the same end is served by the provision, under both programs, that, where more than one religious school is conducted, the hour of release shall be the same for all religious schools. Under both programs, there is no expenditure of public funds involved other than the minor expense of filing attendance reports, a smaller item under the Wisconsin plan because such reports are monthly, not weekly as under the New York plan. Nor do we see any relatedness between released

---

[13] Sec. 118.155, Stats., provides: ". . . The school board may deny the privilege of released time to pupils who absent themselves from such religious instruction after requesting the privilege. . . ." Regulations of the Commissioner of Education of the State of New York, art. 17, sec. 154 (1 N. Y. Official Code Comp. 683) provides, as to attendance: ". . . The religious organizations and parents will assume full responsibility for attendance at the religious schools and will explain any failures to attend on the weekly attendance reports. . . ." Under both programs, attendance reporting, weekly or monthly, is directed and serves the purpose of preventing abuses and misuses of the program.

time for religious instruction and statutes providing for distribution of state funds to local school districts as state aids.[14] To conclude the comparing, we hold the Wisconsin plan or program, set forth in sec. 118.155, Stats., to be identical with the New York plan, promulgated by its state commissioner of education [15] and upheld as constitutionally antiseptic in *Zorach*.

With the fact situations essentially the same, and the interpretation there given the first amendment controlling, the doctrine of stare decisis requires that we here follow *Zorach* and find no constitutional invalidity, on first amendment grounds, in our state's released time for religious instruction statute. However, petitioners, and particularly an amicus curiae brief filed in this case, suggest that *Zorach* may no longer be good or controlling law, having been replaced by the three-pronged test of the *Tilton Case*.[16] That test, as stated in the subsequent *Nyquist* decision, holds that: ". . . to pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, . . . second, must have a primary effect that neither advances nor in-

[14] *Note:* Petitioners see an expenditure of public funds necessitated here by sec. 121.17 (2) (a), Stats., prohibiting distribution of school funds to school districts that do not calendar 180 "school days" each year. "School days" are defined by sec. 115.01 (10), Stats., to be ". . . days on which school is actually taught . . . ." While the issue is here peripherally raised, we see no basis for fearing or holding that days on which pupils are released under and within the time limits set by the released time statute would not qualify as "school days" under the school aid statute above referred to.

[15] Regulations of the Commissioner of Education of the State of New York, *supra,* footnote 13, established pursuant to N. Y. Education Law, sec. 3210, subdiv. 1 (b), providing: "Absence for religious observance and education shall be permitted under rules that the commissioner shall establish."

[16] *Tilton v. Richardson, supra,* footnote 6. *See also: Lemon v. Kurtzman* (1971), 403 U. S. 602, 91 Sup. Ct. 2105, 29 L. Ed. 2d 745.

hibits religion, . . . and, third, must avoid excessive government entanglement with religion . . . ." [17]

There are at least three sound and solid reasons for rejecting the suggestion that the United States Supreme Court, in *Tilton,* sub silentio, withdrew or overruled *Zorach* without mentioning the fact that it was doing so. (1) *Tilton* itself rejects the idea of a "single constitutional caliper" to be applied to all situations, and makes clear that any analysis in the field of first amendment challenges "must begin with a consideration of the cumulative criteria developed over many years and applying to a wide range of governmental action." [18] As to cases involving released time for religious instruction programs, *McCollum* and *Zorach* are the ones among the cumulative criteria that are applicable. (2) In 1973, two years after *Tilton,* the *Nyquist* decision repeats that any first amendment "tests or criteria should be 'viewed as guidelines' within which to consider 'the cumulative criteria developed over many years.'" [19] And *Nyquist*

[17] *Committee for Public Education v. Nyquist, supra,* footnote 7, at page 773.

[18] *Tilton v. Richardson, supra,* footnote 6, at pages 677, 678, the quotation in full being: "Every analysis must begin with the candid acknowledgment that there is no single constitutional caliper that can be used to measure the precise degree to which these three factors [sponsorship, financial support, and active involvement of the sovereign in religious activity] are present or absent. Instead, our analysis in this area must begin with a consideration of the cumulative criteria developed over many years and applying to a wide range of governmental action challenged as violative of the Establishment Clause."

[19] *Committee for Public Education v. Nyquist, supra,* footnote 7, at page 773, footnote 31, quoting *Tilton v. Richardson, supra,* at pages 677, 678, and stating: ". . . Rather, these tests or criteria should be 'viewed as guidelines' within which to consider 'the cumulative criteria developed over many years and applying to a wide range of governmental action challenged as violative of the Establishment Clause.'"

cites and refers to *McCollum* and *Zorach,* these being the only two cases cited as providing guidelines for released time for religious instruction cases.[20] The 1952 case of *Zorach* would hardly have been given such citation and attention in the 1973 *Nyquist* decision if it had, during the intervening years, been abandoned or overturned. (3) In *Nyquist,* the United States Supreme Court went further to place all of its religion-education precedents in two categories: the first, "dealing with religious activities within the public schools," and the second, "involving public aid in varying forms to sectarian educational institutions." [21] *Zorach* held that a released time program, nearly identical to the one now before us, ". . . involves neither religious instruction in public school classrooms nor the expenditure of public funds. . . ." [22] The *Nyquist* categorization reaffirms the *Zorach* conclusion that, where neither religious instruction in the public school classrooms nor the expenditure of public funds are involved, there is no conflict with the establishment of religion clause of the first amendment.

With *Zorach* holding that the exact type of released time program now before us is not subject to successful first amendment challenge, and that decision being here controlling, it is not necessary to take up, one by one, the three-pronged test, first stated in *Tilton* [23] and since

[20] *Id.* at page 772.

[21] *Id.* at page 772.

[22] *Zorach v. Clauson, supra,* footnote 9, at pages 308, 309.

[23] *Tilton v. Richardson, supra,* footnote 6, at page 678. *See also: State ex rel. Warren v. Nusbaum, supra,* footnote 5, at page 323, this court summarizing the *Tilton Case* to require answering four questions: "1. Does the act [the law challenged] reflect a secular legislative purpose? 2. Is the primary effect of the act to advance or inhibit religion? 3. Does the administration of the act foster an excessive governmental entanglement with religion? 4. Does the implementation of the act inhibit the free exercise of religion?"

restated in *Nyquist*.[24] However, for the sake of completeness only, we note that, in the light of *Zorach*, it is clear that no prong of the test pierces the constitutionality of the Wisconsin released time statute. (1) As to reflecting a clearly secular purpose, the first prong of the test,[25] *Zorach* held that the New York released time program, which parallels sec. 118.155, Stats., meant only that ". . . the public schools do no more than accommodate their schedules to a program of outside religious instruction. . . ."[26] Seeing any problem present as "one of degree,"[27] it held that *McCollum* cannot be expanded or the first amendment stretched to mean that "public institutions can make no adjustments of their schedules to accommodate the religious needs of the people."[28] (2) As to the second prong, having a primary effect that neither advances nor inhibits religion,[29] the goal is that of "ensuring governmental neutrality in matters of religion,"[30] and *Zorach* found exactly such neutrality in

[24] *Committee for Public Education v. Nyquist, supra,* footnote 7, at page 773.

[25] *Id.* at page 773, citing *Epperson v. Arkansas* (1968), 393 U. S. 97, 89 Sup. Ct. 266, 21 L. Ed. 2d 228.

[26] *Zorach v. Clauson, supra,* footnote 9, at page 315.

[27] *Id.* at page 314.

[28] *Id.* at page 315, the full quote being: ". . . We follow the *McCollum* case. But we cannot expand it to cover the present released time program unless separation of Church and State means that public institutions can make no adjustments of their schedules to accommodate the religious needs of the people. We cannot read into the Bill of Rights such a philosophy of hostility to religion."

[29] *Committee for Public Education v. Nyquist, supra,* footnote 7, at page 773, citing *McGowan v. Maryland* (1961), 366 U. S. 420, 81 Sup. Ct. 1101, 6 L. Ed. 2d 393; *Abington School Dist. v. Schempp* (1963), 374 U. S. 203, 83 Sup. Ct. 1560, 10 L. Ed. 2d 844.

[30] *Gillette v. United States* (1971), 401 U. S. 437, 449, 450, 91 Sup. Ct. 828, 28 L. Ed. 2d 168, the high court stating: "An attack founded on disparate treatment of 'religious' claims in-

the New York released time for religious instruction program before it,[31] stressing that "No one is forced to go to the religious classroom and no religious exercise or instruction is brought to the classrooms of the public schools." [32]

(3) For the third prong, that excessive entanglement with religion is to be avoided,[33] the only continuing contact or interaction of public schools and the religious groups conducting religious instruction classes would be as to the monthly reports required as to actual attendance of students requesting released time. In *Zorach,* the high court noted the argument made that the ". . . public

vokes what is perhaps the central purpose of the Establishment Clause—the purpose of ensuring governmental neutrality in matters of religion, . . ." adding: ". . . The metaphor of a 'wall' or impassable barrier between Church and State, taken too literally, may mislead constitutional analysis . . . ." Citing *Walz v. Tax Commission* (1970), 397 U. S. 664, 668, 669, 90 Sup. Ct. 1409, 25 L. Ed. 2d 697, and also citing *Zorach v. Clauson, supra,* footnote 9, at pages 312, 313, the case held by this opinion to be controlling on the applicability of the establishment of religion clause.

[31] *Zorach v. Clauson, supra,* footnote 9, at page 314, the high court stating: ". . . The government must be neutral when it comes to competition between sects. It may not thrust any sect on any person. It may not make a religious observance compulsory. It may not coerce anyone to attend church, to observe a religious holiday, or to take religious instruction. But it can close its doors or suspend its operations as to those who want to repair to their religious sanctuary for worship or instruction. No more than that is undertaken here."

[32] *Id.* at page 311, the full quote being: "It takes obtuse reasoning to inject any issue of the 'free exercise' of religion into the present case. No one is forced to go to the religious classroom and no religious exercise or instruction is brought to the classrooms of the public schools. A student need not take religious instruction. He is left to his own desires as to the manner of time of his religious devotions, if any."

[33] *Committee for Public Education v. Nyquist, supra,* footnote 7, at page 773, citing *Lemon v. Kurtzman, supra,* footnote 16, at pages 612, 613, and *Tilton v. Richardson, supra,* footnote 6, at page 678.

school teachers police [the program], keeping tab on students who are released, . . ." [34] but included the contention among others not given weight as being ". . . of no concern here . . . ." [35] In a case in this court, dealing with state aids to a dental college in a church-related university,[36] our court made clear that "excessive entanglement," as used in first amendment cases, ". . . is not a matter of those accounting reports or budgetary controls, . . ." [37] specifically holding that some ". . . audit-type protection against fiscal misdirection of funds can accompany any contract or grant even in this sensitive area. . . ." [38] Weekly or monthly reports on attendance, intended and serving to prevent abuse by pupils of released time permissions, represent even less entanglement than do the accounting reports or budgetary controls above referred to. In the light of *Zorach,* the tests or guidelines in *Tilton* or *Nyquist* are here met.

### The fourteenth amendment.

Petitioners try another shell in the shotgun, claiming that the Wisconsin released time for religious instruction statute (sec. 118.155, Stats.) violates the equal protection clause of the fourteenth amendment to the United States Constitution.[39] This type of shell is of the birdshot variety, carrying only a short distance but scattering pellets over a broadened area. Much of the argument as to denial of equal protection deals with the lack of merit or wisdom of legislative enactment of the released time program. Views, pro or con, on the merits of the pro-

---

[34] *Zorach v. Clauson, supra,* footnote 9, at page 309.

[35] *Id.* at page 310.

[36] *State ex rel. Warren v. Nusbaum, supra,* footnote 5.

[37] *Id.* at page 329.

[38] *Id.* at page 329.

[39] Art. XIV, Amendments to the United States Constitution. *See:* footnote 3.

gram, the high court in *Zorach* held, are "not germane to the narrow constitutional issue presented." [40] Petitioners' brief on this point terms the released time program, mandated by the statute, to be ". . . an unconstitutional bargain using public tax money with a local church authority in violation of the law of the land. . . ." That repeats, in slightly altered language, the conclusion urged as to establishment of religion clause applicability. When *Zorach* struck it down, finding no use of public moneys involved in this type of released time program,[41] that interpretation of what is being done cannot be revived or brought back to life on a fourteenth amendment challenge. The arguments advanced include a claim that an element of improper or suspect classification is involved in permitting students who desire so to do and who have parental permission so to do, to leave the school for religious instruction elsewhere, while others will be remaining in the classroom.[42] This contention is close kin to the contention, raised by petitioners in *Zorach*, that ". . . the classroom activities come to a halt while the students who are released for religious instruction are

[40] *Zorach v. Clauson, supra,* footnote 9, at page 310, the court stating: "The briefs and arguments are replete with data bearing on the merits of this type of 'released time' program. Views *pro* and *con* are expressed, based on practical experience with these programs and with their implications. We do not stop to summarize these materials nor to burden the opinion with an analysis of them. For they involve considerations not germane to the narrow constitutional issue presented. . . ."

[41] *Zorach v. Clauson, supra,* footnote 9, at pages 308, 309, the court holding: "This 'released time' program involves neither religious instruction in public school classrooms nor the expenditure of public funds. . . ."

[42] *See: Dane County v. McManus* (1972), 55 Wis. 2d 413, 423, 198 N. W. 2d 667, as to standards for proper classification in considering the constitutionality of a statute. Quoting *State ex rel. Real Estate Examining Board v. Gerhardt* (1968), 39 Wis. 2d 701, 710, 711, 159 N. W. 2d 622.

on leave . . . ." [43] If it has fourteenth amendment implications when raised here, it had the same implications when raised there. When the argument was rejected in *Zorach*, it is impossible to find that the high court was saying that the contentions raised by petitioners had no validity as far as the establishment of religion clause is concerned, but might have merit and substance insofar as the equal protection clause of the fourteenth amendment is concerned. This conclusion is mandated particularly since the court majority in *Zorach*, after listing arguments that ". . . largely concern the wisdom of the system, its efficiency from an educational point of view, . . ." said firmly ". . . our problem reduces itself to whether New York by this system has either prohibited the 'free exercise' of religion or has made a law 'respecting an establishment of religion' within the meaning of the First Amendment." [44] *Zorach* must be read as thus defining the area of court concern, as well as determining the issues raised, particularly since the first amendment is made applicable to the states through the fourteenth amendment.[45] If we were to apply the constitutional tests for a proper classification under the equal protection clause, we could hardly begin with petitioners' conclusion that ". . . students who remain in class are denied the right to a free and public education supported by everyone's taxes without disruption of their schedules, classes, or programs." There is nowhere in the Wisconsin released time statute any provision for an interruption in the studies of the nonparticipating students. Nor could we use, in testing the classification involved, petitioners' claim that, "Those who are excused are a special class of students who are accorded a special

---

[43] *Zorach v. Clauson, supra,* footnote 9, at page 309.

[44] *Id.* at page 310.

[45] *See: McCollum v. Board of Education, supra,* footnote 9, at pages 211, 212.

privilege on account of their religion and because their parents requested of the board that they be accorded this special status. . . ." That is not the *Zorach* conclusion as to what takes place under a released time program such as we have here. Instead, the *Zorach* decision concludes that: ". . . The teacher in other words cooperates in a religious program to the extent of making it possible for her students to participate in it," [46] adding, "Whether she does it occasionally for a few students, regularly for one, or pursuant to a systematized program designed to further the religious needs of all the students does not alter the character of the act." [47] *Zorach* makes clear that when the state ". . . cooperates with religious authorities by adjusting the schedule of public events to sectarian needs, it follows the best of our traditions, . . ." [48] firmly holding that: ". . . To hold that it may not would be to find in the Constitution a requirement that the government show a callous indifference to religious groups. . . ." [49] We read *Zorach* as holding that there is no such requirement in the first amendment, the fourteenth amendment or anywhere in the federal constitution. We find controlling the *Zorach* conclusion, earlier referred to, that the state can ". . . suspend its operations as to those who want to repair to their religious sanctuary for worship or instruction. . . ." [50] Of the Wisconsin statute, as the high court said of the New York program, "No more than that is undertaken here."

*The Wisconsin Constitution.*

With *Zorach* found to be controlling, and the Wisconsin released time for religious instruction statute held

---

[46] *Zorach v. Clauson, supra,* footnote 9, at page 313.

[47] *Id.* at page 313.

[48] *Id.* at page 314.

[49] *Id.* at page 314.

[50] *Id.* at page 314.

not to be violative of the establishment of religion or equal protection clauses of the United States Constitution, there remains petitioners' contention that that statute, sec. 118.155, Stats., violates art. I, sec. 18, of the Wisconsin Constitution. This is the freedom of worship section of our state constitution and includes language more specific than the terser establishment of religion and free exercise thereof clauses in the first amendment of the federal constitution. However, of the difference in wording, this court has recently held: ". . . While words used may differ, both the federal and state constitutional provisions relating to freedom of religion are intended and operate to serve the same dual purpose of prohibiting the 'establishment' of religion and protecting the 'free exercise' of religion. . . ." [51] As to freedom of worship, sec. 18 provides: "The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; . . ." The released time statute accommodates, rather than restricts the right of students, with parental permission, to, in the words of *Zorach*, ". . . repair to their religious sanctuary for worship or instruction. . . ." [52] As to establishment of religion, sec. 18 provides: ". . . nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any ministry, against his consent . . . ." Under the released time statute, as *Zorach* notes, ". . . A student need not take religious instruction. He is left to his own desires as to the manner or time of his religious devotions, if any." [53] While monthly attendance reports are to be furnished to the schools, these reports function solely to assure the right under the statute of the school board to deny the privilege of

[51] *State ex rel. Warren v. Nusbaum, supra,* footnote 5, at page 332.

[52] *Zorach v. Clauson, supra,* footnote 9, at page 314.

[53] *Id.* at page 311.

released time to pupils who absent themselves from such religious instruction after requesting such privilege. It is not truancy, but deception, that is aimed at. Compulsion to attend is not, initially or subsequently, a part of the program. As to free exercise thereof, sec. 18 provides: ". . . nor shall any control of, or interference with, the rights of conscience be permitted. . . ." With permission of the parents and election of the students required, no element of interference with rights of individual conscience is involved in the released time program under the statute. As to establishment of religion, sec. 18 provides, ". . . nor shall . . . any preference be given by law to any religious establishment or modes of worship . . . ." With the challenge being to the law on its face, our decision does not include the possible situations that may arise, each to be "properly evaluated if and when challenges arise." [54] As to establishment of religion, sec. 18 provides: ". . . nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries." We follow *Zorach* in finding no use or expenditure of public funds involved in the type of released time program established by the Wisconsin statute. As to each of the individual assurances and proscriptions of art. I, sec. 18, of the Wisconsin Constitution, we find no impingement

[54] "Individual projects can be properly evaluated if and when challenges arise with respect to particular recipients and some evidence is then presented to show that the institution does in fact possess these characteristics. We cannot, however, strike down an Act of Congress on the basis of a hypothetical 'profile.' " *Tilton v. Richardson, supra,* footnote 6, at page 682. Quoted and followed in *State ex rel. Warren v. Nusbaum* (1974), 64 Wis. 2d 314, 322, 323, 219 N. W. 2d 577, this court there holding: ". . . Under the facts we can only determine whether sec. 115.85 (2) (d) is unconstitutional on its face. While in application thereof, some constitutional infirmity may arise, such a situation would, however, have to be determined on its individual facts."

as to any one or all by the released time statute, sec. 118.155, Stats.

Additionally, it must be given consideration that in April of 1972, by vote of the electorate, there was added to the Wisconsin Constitution an amendment to art. X, sec. 3, providing that ". . . the legislature by law may, for the purpose of religious instruction outside the district schools, authorize the release of students during regular school hours." While this would not block successful challenge on the ground of violation of provisions of the United States Constitution made applicable to the states, it does render inappropriate the claim that what was specifically authorized by constitutional amendment offends the document to which the authorization was added. Sec. 118.155, Stats., does require, rather than merely authorize, the granting of released time for religious instruction to students where the parents have given their written permission. Petitioners see this distinction as creating an infringement upon inherent powers of a school board, set forth in art. X, sec. 3, of the state constitution. If this position is correct, mandatory statutes that would fall would include those relating to curriculum requirements,[55] special observance days,[56] textbooks,[57] safety requirements,[58] school fences,[59] and, possibly, even required certification of teachers.[60] Sec. 120.13, sets out the powers of a district school board, listing what such board "may" do. Sec. 120.12, lists the duties of a district school board, listing what such board "shall" do. We see no problem of either consitutional dimension or legislative construction involved

[55] Sec. 118.01, Stats.
[56] Sec. 118.02, Stats.
[57] Sec. 118.03, Stats.
[58] Sec. 118.07, Stats.
[59] Sec. 118.11, Stats.
[60] Sec. 118.19, Stats.

in the establishment, by the use of the word "shall," of a released time program as a duty rather than as a power of a local school board.

So we conclude that the released time for religious instruction statute (sec. 118.155, Wis. Stats.) does not violate (1) the establishment of religion clause of the first amendment to the United States Constitution; (2) the equal protection clause of the fourteenth amendment to the United States Constitution; or (3) the freedom of worship or district school sections of the Wisconsin Constitution. So holding, we deny the issuance of the requested writ of mandamus.

*By the Court.*—Petition for writ of mandamus is denied.