FRED A. RISSER, Chairperson Senate Organization Committee
You ask whether 1987 Senate Bill 366, which directs the superintendent of public instruction to loan textbooks to elementary and secondary school students, would be constitutional if enacted into law. Under the bill, the superintendent would, at the request of the student or the student's parent or guardian, loan items on an approved list of textbooks which could not promote the interest of any religion. The bill also requires that public and private school students participate equally in the program.
Although my opinion is necessarily limited to facial constitutionality since no such textbook loan program has ever existed in Wisconsin, it is my opinion that the proposed legislation would not violate the religion clauses contained in the federal and state constitutions.
In analyzing the constitutionality of the proposed legislation, it cannot be overemphasized that "[a]ll statutes are presumed constitutional and will be held to be so unless proven otherwise beyond a reasonable doubt . . . ." St. ex rel. Ft. How. Paper v.Jake Dist. Bd., 82 Wis.2d 491, 505, 263 N.W.2d 178 (1978). If possible, I must also "avoid construing a statute in such a way as would render that statute unconstitutional." United Statesfire Ins. Co. v. E.D. Wesley Co., 105 Wis.2d 305, 319,313 N.W.2d 833 (1982). These principles and their importance are described in detail in Treiber v. Knoll, 135 Wis.2d 58, 64-65,398 N.W.2d 756 (1987), quoting State ex rel. Hammermill Paper Co.v. La Plante, 58 Wis.2d 32, 46, 205 N.W.2d 784 (1973) and Stateex rel. Carnation M. P. Co. v. Emery, 178 Wis. 147, 160,189 N.W. 564 (1922). Also see Unnamed Petitioners v. Connors,136 Wis.2d 118, 120-21 n. 2, 401 N.W.2d 782 (1987). See
76 Op. Att'y Gen. 233, 236 (1987).
The first amendment to the United States Constitution provides in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." By virtue of the fourteenth amendment, this provision applies to the states. *Page 67 Cantwell v. State of Connecticut, 310 U.S. 296 (1940). The following three-part test is applied in order to determine the facial constitutionality of a statute under this provision, which prohibits the "establishment" of religion: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . finally, the statute must not foster `an excessive government entanglement with religion' [citations omitted]."Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971).[1] AlthoughLemon indicates that direct state reimbursement to parochial schools for the cost of textbooks is not constitutionally permissible, the United States Supreme Court has almost uniformly upheld the constitutionality of various textbook loan programs, using this same three-part test. Wolman v. Walter, 433 U.S. 229
(1977); Meek v. Pittenger, 421 U.S. 349 (1975); Board of Ed. ofCent. Sch. Dist. No. 1 v. Allen, 392 U.S. 236 (1968).[2]
1987 Senate Bill 366 is obviously modeled after 1979 Assembly Bill 227, which in turn "bears a striking resemblance to the statutory language approved by the Court in Wolman." 68 OP. Att'y Gen. 287, 289 (1979). In Wolman, 433 U.S. at 236-37, the Ohio statute approved by the Court limited the textbook loan program to "`secular textbooks'" and defined the term "textbook" as "`any book or book substitute which a pupil uses as a text or text substitute in a particular class or program in the school he regularly attends.'" 1987 Senate Bill 366 contains definitions similar to those used in Wolman. It defines "textbook" as "a book, reusable workbook or reusable manual, intended as a principal source of study material for an individual pupil in a particular class." It also prohibits the use of any such textbook which "promotes the interests of any religion . . . ." For the purpose of analyzing the constitutional question raised in your letter, I perceive no meaningful distinction between the definitions contained in 1987 Senate Bill 366, the definitions contained in Wolman, or the definitions contained in *Page 68 
1979 Assembly Bill 227 which are outlined in 68 OP. Att'y Gen. 287.
In Wolman, 433 U.S. at 240, the Court found that a textbook loan program serves a secular legislative purpose because "[t]here is no question that the State has a substantial and legitimate interest in insuring that its youth receive an adequate secular education." It was indicated in 68 OP. Att'y Gen. at 298, that a statement of legislative purpose would have strengthened the facial constitutionality of 1979 Assembly Bill 227. That suggestion has been heeded in the current bill. 1987 Senate Bill 366, section 1, provides in part that the purpose of the textbook loan program is to "ensure that all pupils in this state share equitably in educational benefits . . ." under Wisconsin Constitution article X, section 3, which provides for the establishment of a uniform system of public schools, but prohibits sectarian instruction in such schools.
I have not discovered any case involving a legal challenge to the constitutionality of a textbook loan program which holds that any such program lacks a secular legislative purpose. The statement of legislative purpose contained in the bill coupled with the Supreme Court's statement in Wolman, are more than sufficient to indicate that 1987 Senate Bill 366 has a secular legislative purpose.
Turning to the primary effect test, in Allen, 392 U.S. at 243, the Court emphasized that, since the books in that case were always owned by the State of New York and were loaned to parents and children rather than parochial schools the primary effect of the statute was to "make available to all children the benefits of a general program to lend school books free of charge." Similarly, in Mueller, 463 U.S. at 399, where the Court upheld state tax deductions for the partial cost of tuition, textbooks and transportation incurred at public or private schools. the Court acknowledged "that financial assistance provided to parents ultimately has an economic effect comparable to that of aid given directly to the schools . . ." but nonetheless indicated that "the attenuated financial benefits flowing to parochial schools . . ." are not the "evil against which the Establishment Clause was designed to protect."
Wolman, Allen and Mueller indicate that the federal courts would hold that the primary effect of 1987 Senate Bill 366 is to enhance educational opportunities for students by making secular textbooks equally and readily available to public and private *Page 69 
elementary and secondary school students. Any advancement of religion which would occur in the form of cost savings by parochial schools would be found to constitute merely a secondary or incidental effect of operating such a program.
As to excessive entanglement, the following language by which the Court specifically upheld deductions for the cost of nonreligious textbooks is instructive because it is equally applicable to the compilation of an approved list of nonreligious textbooks by the superintendent:
 Turning to the third part of the Lemon inquiry, we have no difficulty in concluding that the Minnesota statute does not "excessively entangle" the State in religion. The only plausible source of the "comprehensive, discriminating, and continuing state surveillance, " . . . necessary to run afoul of this standard would lie in the fact that state officials must determine whether particular textbooks qualify for a deduction. In making this decision, state officials must disallow deductions taken for "instructional books and materials used in the teaching of religious tenets, doctrines or worship, the purpose of which is to inculcate such tenets, doctrines or worship." . . Making decisions such as this does not differ substantially from making the types of decisions approved in earlier opinions of this Court.
Mueller, 463 U.S. at 403 (citing Allen, Wolman and Meek).
Given the Court's holding in Mueller, it is abundantly clear that 1987 Senate Bill 366 also does not foster excessive entanglement with religion and therefore may permissibly be enacted under the Establishment Clause.
For the purpose of federal constitutional analysis, it remains largely true that "the constitutionality of the textbook loan programs is one issue to which the Supreme Court's answer has remained constant." 68 Op. Att'y Gen. at 291. Thus, in applying the Supreme Court's decisions concerning the constitutionality of textbook loan programs, lower federal courts have not hesitated to uphold the facial constitutionality of statutes that establish such programs. See, e.g., Elbe v. Yankton Independent SchoolDist. No. 1, 714 F.2d 848 (8th Cir. 1983). I therefore have no hesitation in concluding that 1987 Senate Bill 366 is a permissible enactment under the Establishment Clause. *Page 70 
A state constitutional analysis yields a similar result. Wisconsin Constitution article I, section 18 provides in part as follows: "[N]or shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries." Although the same three-part test used by the United States Supreme Court has been employed by the Wisconsin Supreme Court for the purpose of state constitutional analysis, State exrel. Warren v. Nusbaum, 64 Wis.2d 314, 219 N.W.2d 577 (1974), the court has also noted that this state constitutional provision is "more prohibitive" than the Establishment Clause. State exrel. Warren v. Reuter, 44 Wis.2d 201, 227, 170 N.W.2d 790
(1969). Nevertheless, in construing Reuter, the court later held as follows:
 However, of the difference in wording, this court has recently held: ". . . While words used may differ, both the federal and state constitutional provisions relating to freedom of religion are intended and operate to serve the same dual purpose of prohibiting the `establishment' of religion and protecting the `free exercise' of religion. . . ."
State ex rel. Holt v. Thompson, 66 Wis.2d 659, 676,225 N.W.2d 678 (1975). And in State ex rel. Wis. Health Fac. Auth. v.Lindner, 91 Wis.2d 145, 163-64, 280 N.W.2d 773 (1979), the court indicated that, if a statute passes muster under the primary effect test with respect to the Establishment Clause of the United States Constitution, it will also pass muster under the identical test with respect to Wisconsin Constitution article I, section 18.
In construing these decisions of the Wisconsin Supreme Court concerning Wisconsin Constitution article I, section 18, the court of appeals has held as follows:
 The Wisconsin Supreme Court has recently noted that despite the different wording of the federal and state constitutional provisions respecting religion, both are intended to effect the same objects of preventing the government from "establishing" religion and preserving to individual citizens the right to exercise their religious beliefs freely. . . . Consequently, it has employed the tests enunciated by the United States Supreme Court in construing the requirements of the establishment clause to determine whether specific state laws or actions are violative of either constitutional provision. *Page 71 
American Motors Corp. v. ILHR Dept., 93 Wis.2d 14, 29,286 N.W.2d 847 (1979) (citations omitted). Other state courts have employed this same approach in upholding textbook loan programs, reasoning that their state constitutions should be construed in the same manner that the Supreme Court has construed analogous provisions of the federal constitution. See, e.g., Opinion of theJustices, 109 N.H. 578, 258 A.2d 343 (1969); Bowerman v.O'Connor, 104 R.I. 519, 247 A.2d 82 (1968). See also People exrel. Klinger v. Howlett, 56 Ill. 2d 1, 305 N.E.2d 129, 130 and 139 (dissenting opinion) (1973). Like the court of appeals, I conclude that the test applied by the Wisconsin Supreme Court under article 1, section 18 of the Wisconsin Constitution is not significantly different from the three-part test applied by the United States Supreme Court under the Establishment Clause. See
68 Op. Att'y Gen. at 295-99.[3]
I am aware that a number of state courts have held textbook loan programs to be impermissible under various state constitutional provisions. Fannin v. Williams, 655 S.W.2d 480
(Ky. 1983); California Teachers Ass'n v. Riles, 29 Cal. 3d 794,176 Cal. Rptr. 300, 632 P.2d 953 (1981); Bloom v. SchoolCommittee of Springfield, 376 Mass. 35, 379 N.E.2d 578 (1978);McDonald v. School Bd. of Yankton, Etc., 90 S.D. 599,246 N.W.2d 93 (1976); Paster v. Tussey, 512 S.W.2d 97 (Mo. 1974) (en banc);Gaffney v. State Department of Education, 192 Neb. 358,220 N.W.2d 550 (1974); Dickman v. School District No. 62C, OregonCity, 232 Or. 238, 366 P.2d 533 (1960); Almond v. Day,197 Va. 419, 89 S.E.2d 851 (1955). See also Epeldi v. Engelking,94 Idaho 390, 488 P.2d 860 (1971). But caution is warranted in according weight to these decisions for at least three reasons.
First, even though these courts were construing state constitutional provisions, it is likely that many of them would have been influenced to construe their constitutional counterparts to the Establishment Clause differently if they had had the benefit of all four of the Supreme Court's decisions inMueller, Wolman, Meek and Allen. Second, even where more stringent analyses than that *Page 72 
employed by the Supreme Court were utilized by these courts, insofar as might be applicable to Wisconsin Constitution article I, section 18, primary effect appears to be the principal reason advanced by these courts for striking down textbook loan programs. See, e.g., Riles, 632 P.2d at 960 (citing cases). Since such an approach was specifically rejected in Lindner, that kind of rigorous analysis is not required under Wisconsin Constitution article I, section 18. Finally, and perhaps most importantly, none of the constitutional provisions construed by these state courts contains language precisely identical to that in Wisconsin Constitution article I, section 18.
With respect to the Establishment Clause, I have already indicated that the proposed legislation has a secular legislative purpose, has a primary effect that would neither inhibit nor advance religion and would not foster excessive governmental entanglement with religion. That same analysis indicates that the proposed legislation is also a permissible enactment under Wisconsin Constitution article I, section 18.
I therefore conclude that 1987 Senate Bill 366 would be constitutional on its face if enacted into law.
DJH:FTC
[1] Political divisiveness, a fourth test which is sometimes used by the court, see Lynch v. Donnelly, 465 U S. 668, 689
(1984) (O'Connor. J., concurring), applies only where "direct financial subsidies are paid . . . . Mueller v. Allen,463 U S. 388, 403 n. 11 (1983).
[2] In Norwood v. Harrison, 413 U.S 413 (1973), the court did invalidate a statute permitting textbooks to be loaned without regard to whether the public or private school engaged in racially discriminatory policies However, 1987 Senate Bill 366, section 4, conditions public or private school eligibility for the program on compliance with 42 U.S.C. § 2000d (1964), which prohibits such discrimination.
[3] am not suggesting that all provisions of the state constitution will automatically be construed by the courts of this state in the same fashion that the Supreme Court construes analogous provisions of the federal constitution. See Jacobs v.Majors, 139 Wis.2d 492, 407 N.W.2d 832 (1987). Compare
Abrahamson, "Reincarnation of State Courts," 36 Sw. L.J. 951 (1982) with Hudnut, "State Constitution and Individual Rights.The Case For Judicial Restraint," 63 Den. IJ L. Rev. 85 (1985). *Page 73